UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY M. FORESTA | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| | : | |
| VS. | : | |
| | : | |
| CENTERLIGHT CAPITAL MANAGEMENT, | : | |
| LLC; GARY KILBERG, in his individual and | : | |
| official capacities; ANDREW CONSTAN, in his | : | |
| individual and official capacities; CHARLES | : | |
| PARKHURST, in his individual and official | : | |
| capacities; and RAHUL SONDHI, in his | : | |
| individual and official capacities, | : | |
| Defendant. | : | OCTOBER 14, 2008 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Anthony M. Foresta ("Plaintiff" or "Mr. Foresta"), by and through his undersigned counsel, as and for his Complaint in this action against Defendants, Centerlight Capital Management, LLC ("CCM" or the "Company"), Gary Kilberg, Andrew Constan, Charles Parkhurst and Rahul Sondhi (together, the "Individual Defendants") (collectively, "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.        This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including Defendants' discriminatory, retaliatory and unlawful termination of Plaintiff's employment due to Plaintiff's disabilities (Occipital Neuralgia and Cervical Spondylosis), Defendants' perception that Plaintiff was disabled, and/or Plaintiff's history or record of disability, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA"), the Connecticut Fair Employment Practices Act, Connecticut General Statute §§ 46a-51 et seq. ("CFEPA"), and the Connecticut Wage Law, C.G.S. §§ 31-58 et seq., as well as other unlawful conduct.

## JURISDICTION AND VENUE

2.        The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.   The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

2

3.        Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**PARTIES**

4.        Plaintiff Anthony M. Foresta is a resident of New York State, Queens County.  At all relevant times Mr. Foresta met the definition of an "employee," a "qualified individual with a disability" and/or a "physically disabled employee" under all applicable statutes through his employment with Defendants.

5.        Defendant CCM is a private equity firm engaged in fixed income and derivative trading.   Upon information and belief, CCM is a Delaware limited liability company with its primary place of business located at 3 River Road, Greenwich, Connecticut 06807.  At all relevant times, CCM met the definition of an "employer" under all applicable statutes.

6.        Defendant Gary Kilberg is a co-founder of Defendant CCM who, upon information and belief, resides at 36 Mayfair Lane, Greenwich, Connecticut 06831. At all relevant times, he was an Investment Manager at Defendant CCM, in which

capacity he participated directly in the unlawful discriminatory and retaliatory conduct against Plaintiff.

7.        Defendant Andrew Constan is a co-founder of Defendant CCM who, upon information and belief, resides at 25 Garden Road, Scarsdale, New York 10583.  At all relevant times, he was an Investment Manager at Defendant CCM, in which capacity he participated directly in the unlawful discriminatory and retaliatory conduct against Plaintiff.

8.        Defendant Charles Parkhurst is a co-founder of Defendant CCM who, upon information and belief, resides at 93 Old Church Road, Greenwich, Connecticut 06807.  At all relevant times, he was an Investment Manager at Defendant CCM, in which capacity he participated directly in the unlawful discriminatory and retaliatory conduct against Plaintiff.

9.        Defendant Rahul Sondhi is the Chief Operating Officer of Defendant CCM who, upon information and belief, resides at 310 West End Avenue, New York, New York 10023.  At all relevant times, he held this position and participated directly in the unlawful discriminatory and retaliatory conduct against Plaintiff.

10.**PROCEDURAL REQUIREMENTS**

11.          Plaintiff has complied with all statutory prerequisites to filing this action.

12.          On or about December 14, 2007, Plaintiff filed a charge of discrimination and retaliation against Defendant CCM with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO"), alleging violations of the ADA and CFEPA.  The allegations of discrimination and retaliation contained in the charge arise out of the same facts alleged herein.

13.          On or about July 21, 2008, Plaintiff received his right to sue letter from the EEOC/CHRO concerning his allegation of discrimination and retaliation in violation of the ADA and CFEPA.  This action was commenced within 90 days of Plaintiff's receipt of notice of his right to sue.

14.          Any and all other prerequisites to the filing of this suit have been met.

15.**FACTUAL ALLEGATIONS**

I.          **Background**

16.       Mr. Foresta began working as a consultant to Archeus Capital ("Archeus"), Defendant CCM's predecessor company, in September 2005, at a time when Archeus was celebrating its apparent success as a high-flying hedge fund. At that time, Archeus had recently raised assets in excess of $3 billion through a multi-strategy investment approach that focused on exploiting arbitrage opportunities in convertible bonds.

17.       However, given the complexity of its investment strategies and the tremendous growth of its assets, Archeus and its investors recognized that the fund needed to undertake a derivatives audit project to reconcile its books and records over a two and one-half year period. Archeus hired Mr. Foresta to conduct this audit and reconciliation project.

18.        Having handled similar work for numerous banking and financial services companies over the preceding 15 years, Mr. Foresta was eminently qualified to manage an audit of such complexity and importance to the future of the Company and, as the fund's founders acknowledged, Mr. Foresta's performance in this capacity was exemplary.

19.       In the course of Mr. Foresta's audit and work to reconcile Archeus' books, Archeus' investment strategy began to fall into disrepute, and the fund

announced on October 30, 2006 that it was winding down operations and preparing to go out of business.

20.        Nevertheless, recognizing the tremendous depth of experience and dedication that Mr. Foresta had demonstrated in the course of auditing and working to reconcile Archeus' records, several of the fund's founders and investment managers invited him to assume the role of Operations Manager for a new hedge fund that they were forming, Centerlight Capital Management.

21.        Mr. Foresta accepted the offer to join Defendant CCM and worked for the Company as a consultant and independent contractor through July 31, 2007, when CCM formally changed his status to that of a full time employee.

## II.   Mr. Foresta Suffers Painful Physical Symptoms and is Diagnosed With Two Different Medical Disabilities

22.        In or around the beginning of September 2007, Mr. Foresta was suffering from intensifying and painful physical symptoms, including severe neck and head pain, severe sensations of pressure, tingling and numbness in his neck and head, sensitivity to light, dizziness and blurred vision.

23.        When the combined effects of these afflictions began to impair his capacity to function normally on a day-to-day basis, Mr. Foresta consulted with a number of doctors and medical specialists who performed extensive evaluations of his condition, including Magnetic Resonance Imaging (MRI) brain scans and other diagnostic procedures, and prescribed medications to combat his worsening medical

conditions.  He ultimately was diagnosed as suffering from Occipital Neuralgia and Cervical Spondylosis.

24.       Throughout this period of consultations with medical experts and diagnostic procedures, Mr. Foresta kept Defendants closely informed, in both oral  and written communications, of his medical condition, as well as the treatment and evaluation that he was receiving from his doctors.  He also informed Defendants of his diagnosis, once received.

## III.  CCM Authorizes Mr. Foresta to Work From Home as An Agreed-Upon Accommodation for His Disabilities

25.       In September 2007, Mr. Foresta spoke with Defendant Sondhi, who was his direct supervisor and the Chief Operating Officer at CCM, about the possibility of working from home, which would enable him to better manage the debilitating effects of his worsening medical conditions.

26.       Defendant Sondhi and each of the Individual Defendants granted approval for this accommodation of Mr. Foresta's disabilities, and assured Mr. Foresta that he had the full support of CCM.

27.       Accordingly, with the approval of the Defendants, Mr. Foresta began working from home as an agreed-upon accommodation for his disabilities.

28.       Although Mr. Foresta's medical needs occasionally prevented him from working full days, he always made up for any lost time by working late into the night and on weekends, and remained in close contact with the Company on a regular, often daily, basis.

29.       Indeed, the Individual Defendants repeatedly commended Mr. Foresta for the high quality and volume of his work during this accommodation period, which was consistent with his established record of exemplary service to CCM.

## IV.  Defendants Terminate Mr. Foresta's Employment Because of His Disabilities and His Decision to Consult With Counsel

30.       While working from home, Mr. Foresta also periodically contacted the Individual Defendants on his own initiative to ask them whether the Company

required any additional documentation from his treating physicians in connection with the Company's accommodation of his disabilities.

31.        In response, the Individual Defendants consistently responded to Mr. Foresta that the Company was satisfied with the agreed-upon accommodation of his disabilities and that no further paperwork or doctor certifications were required.

32.        However, only a few weeks later, on October 30, 2007, Defendant Sondhi notified Mr. Foresta – without any discussion or advance notice – that CCM was unilaterally changing his status at the Company to an undefined "medical leave" of absence.

33.        Defendant Sondhi flatly refused to explain what had precipitated CCM's decision to place Mr. Foresta on "medical leave," and would not even answer Mr. Foresta's basic questions about what this change in his status actually meant for his employment.

34.        Mr. Foresta informed CCM that he had consulted with private counsel regarding Defendants' treatment of him as a disabled employee in the workplace.

35.        Later that same day, Mr. Foresta discovered that he could no longer access his Blackberry or the Company's computer system.  When he called the office to request assistance in resolving this problem, the receptionist informed him that he was not authorized to speak with anyone at CCM other than Defendant Sondhi, who had already left for the day.

36.        Although Mr. Foresta called Defendant Sondhi's cell phone repeatedly throughout the day, Defendant Sondhi maintained that he was "unavailable" to speak to Mr. Foresta until later that evening.

37.        When they finally spoke, Defendant Sondhi informed Mr. Foresta that CCM is "not dealing with [your] medical situation anymore."

38.        When Mr. Foresta asked Defendant Sondhi to clarify what that meant, Defendant Sondhi responded dismissively that he could not tell Mr. Foresta anything further about his new "medical leave" status, but that he would be available to discuss the issue in greater detail on the following day.

39.        When Mr. Foresta tried to call Defendant Sondhi the following morning, he was told that Defendant Sondhi would not be available to speak to him until

later that afternoon.  After Mr. Foresta waited all day for Defendant Sondhi to finally return his call, Defendant Sondhi stated only that there was no update on what the new "medical disability" status meant for his position at the Company.

40.        Although Mr. Foresta pleaded with Defendant Sondhi for clarification as to his status, and emphasized that it was important for him to know what the new "disability leave" status meant for his future at the Company – because he had a serious medical condition that required ongoing treatment, as well as a family to support – Defendant Sondhi nevertheless refused to provide any clarification or details regarding Mr. Foresta's status or the sudden change in the Company's treatment of him.

41.        On the following day, November 1, 2007, Defendant Sondhi did not contact Mr. Foresta until 6:00 p.m.  When Defendant Sondhi finally called, he told Mr. Foresta that "your medical condition is not working out for us, so we are terminating your employment."

42.        Defendant Sondhi offered no further explanation for the Company's sudden decision to terminate Mr. Foresta's employment, and would not even discuss the Company's abandonment of its previously agreed-upon accommodation of his disabilities.

43.        Defendant Sondhi also refused to identify any concerns that CCM may have had in connection with Mr. Foresta working from home, or any other change of circumstances that would warrant the Company's sudden repudiation of its agreed-upon accommodation of his disabilities – let alone its decision to summarily terminate his employment – without providing him with any legitimate justification or any advance.

44.        Defendants terminated Mr. Foresta's employment without paying him his salary for October 2007, and without any continuation of his medical insurance, despite having full knowledge of the tremendous hardship that this uncustomary and unlawful conduct would impose upon Mr. Foresta.

45.        Thus, without any advance notice or explanation, and contrary to the unqualified praise that had been consistently forthcoming from the Individual Defendants, Mr. Foresta was confronted by mounting, unanticipated medical expenses as he struggled to cope with the symptoms of his disabilities and to support his family while also searching for new employment.

## FIRST CAUSE OF ACTION

**(Discrimination in Violation of ADA)**

46.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

47.     Defendant CCM discriminated against Plaintiff in violation of the ADA by denying him equal terms and conditions of employment, including but not limited to, terminating his employment and failing to pay him earned wages, despite Plaintiff being fully qualified and at all times performing his duties in a professional and competent manner, because of Plaintiff's disability, because Defendant CCM regarded Plaintiff as disabled, and/or because of Plaintiff's record of disability.

48.     As a direct and proximate result of Defendant CCM's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

49.     As a direct and proximate result of Defendant CCM's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

50.     Defendant CCM's unlawful and discriminatory conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

**(Violation of Duty of Reasonable Accommodation Under ADA)**

51.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

52.    Defendant CCM violated its duty to provide Plaintiff with a reasonable accommodation under the ADA when it unilaterally rescinded an agreed-upon reasonable accommodation for Plaintiff's disabilities without any valid business justification for doing so, and without engaging in an interactive process with Plaintiff concerning his need for a reasonable accommodation for his disabilities.

53.    As a direct and proximate result of Defendant CCM's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

54.    As a direct and proximate result of Defendant CCM's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

55.    Defendant CCM's unlawful and discriminatory conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION

### (Retaliation in Violation of ADA)

56.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 53 as if fully set forth herein.

57.    Defendant CCM subjected Plaintiff to unlawful retaliation in violation of the ADA, including but not limited to, terminating Plaintiff's employment, refusing to pay Plaintiff earned wages, and cancelling Plaintiff's health insurance, in

response to Plaintiff's requests that Defendant CCM reasonably accommodate his disability and/or his disclosure of his decision to consult with counsel regarding his protected rights as a "qualified individual with a disability" and/or a "disabled employee" in the workplace.

58.    As a direct and proximate result of Defendant CCM's unlawful and retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

59.    As a direct and proximate result of Defendant CCM's unlawful and retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

60.    Defendant CCM's unlawful and retaliatory conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

### (Discrimination in Violation of CFEPA)

61.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 58 as if fully set forth herein.

62.    Defendant CCM discriminated against Plaintiff in violation of the CFEPA by denying him equal terms and conditions of employment, including but not limited to, terminating his employment and failing to pay him earned wages, despite Plaintiff being fully qualified and at all times performing his duties in a professional and competent manner, because of

14

Plaintiff's disability and/or because Defendant CCM regarded Plaintiff as disabled.

63.    As a direct and proximate result of Defendant CCM's unlawful and discriminatory conduct in violation of the CFEPA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

64.    As a direct and proximate result of Defendant CCM's unlawful and discriminatory conduct in violation of the CFEPA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

65.    Defendant CCM's unlawful and discriminatory conduct constitutes a knowing, malicious, willful and wanton violation of the CFEPA for which Plaintiff is entitled to an award of punitive damages.

### FIFTH CAUSE OF ACTION

**(Violation of Duty of Reasonable Accommodation Under CFEPA)**

66.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 63 as if fully set forth herein.

67.    Defendant CCM violated its duty to provide Plaintiff with a reasonable accommodation under the CFEPA when it unilaterally rescinded an agreed-upon reasonable accommodation for Plaintiff's disabilities without any valid business justification for doing so, and without engaging in an interactive process with Plaintiff concerning his need for a reasonable accommodation for his disabilities.

68.    As a direct and proximate result of Defendant CCM's unlawful and discriminatory conduct in violation of the

CFEPA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

69.    As a direct and proximate result of Defendant CCM's unlawful and discriminatory conduct in violation of the CFEPA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

70.    Defendant CCM's unlawful and discriminatory conduct constitutes a knowing, malicious, willful and wanton violation of the CFEPA for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION

### (Retaliation in Violation of CFEPA)

71.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 68 as if fully set forth herein.

72.    Defendants subjected Plaintiff to unlawful retaliation in violation of the CFEPA, including but not limited to, terminating Plaintiff's employment, refusing to pay Plaintiff earned wages, and cancelling Plaintiff's health insurance, in response to Plaintiff's requests that Defendants reasonably accommodate his disability and/or his disclosure of his decision to consult with counsel regarding his protected rights as a "qualified individual with a disability" and/or a "disabled employee" in the workplace.

73.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the CFEPA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and

future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

74.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the CFEPA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

75.    Defendants' unlawful and retaliatory conduct constitutes a knowing, malicious, willful and wanton violation of the CFEPA for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION

### (Aiding and Abetting Violations of CFEPA – Against the Individual Defendants)

76.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 73 as if fully set forth herein.

77.     The Individual Defendants were Plaintiff's supervisors and/or partners or principals of Defendant CCM, and knowingly or recklessly aided and abetted the unlawful employment practices, unlawful discrimination and/or unlawful retaliation against Plaintiff in violation of the CFEPA by actively participating in the unlawful, discriminatory and retaliatory conduct set forth above.

78.     As a direct and proximate result of the Individual Defendants' unlawful, discriminatory and retaliatory conduct in violation of the CFEPA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief for which he is entitled to an award of monetary damages and other relief.

79.     As a direct and proximate result of the Individual Defendants' unlawful, discriminatory and retaliatory conduct in violation of the CFEPA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

80.     The Individual Defendants' unlawful discriminatory and retaliatory conduct constitutes a knowing, malicious, willful and wanton violation of the CFEPA for which Plaintiff is entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

### (Violation of Connecticut Wage Law)

81.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

82.    Defendant CCM is an Employer for the purposes of C.G.S. §§ 31-58 et seq. (the "Connecticut Wage Law").

83.    Plaintiff is an Employee for the purposes of the Connecticut Wage Law.

84.    Plaintiff performed services for CCM in return for compensation, including the unpaid base salary, discussed at paragraph 42, above.

85.    The unpaid base salary qualifies as "wages," which may not be forfeited, and may not be deferred without the express permission of the Labor Commissioner for the State of Connecticut.

86.    The unpaid base salary qualify as "wages" under C.G.S. § 31-71a as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."

87.    Defendant CCM, as an Employer, failed to pay wages in accordance with the Connecticut Wage Statute in the amount of $14,583.33 in base salary.

88.    Plaintiff seeks twice the full amount of such unpaid wages, $29,166.66, with costs and reasonable attorney's fees as may be allowed by the court under C.G.S.    § 31-72 (Civil action to collect wage claim, fringe benefit claim or arbitration award).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of Connecticut;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    An order directing Defendants to place Plaintiff in the position he would have occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

F.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

G.    An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.    An award of punitive damages;

I.    An award of damages equal to twice the full amount of unpaid wages, $29,166.66, in accordance with the Connecticut Wage Law;

J.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

K.    Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated at Darien, Connecticut this 14th day of October, 2008.

ANTHONY M. FORESTA

BY:    _____
       MARK R. CARTA (ct06645)
       Rucci, Burnham, Carta, Carello & Reilly, LLP
       30 Old Kings Highway South
       Post Office Box 1107
       Darien, Connecticut 06820
       Telephone (203) 899-3300
       Facsimile (203) 655-4302
       mcarta@rucciburnham.com

       SCOTT B. GILLY (*to be admitted pro hac vice*)
       ARIEL Y. GRAFF (*to be admitted pro hac vice*)
       Thompson Wigdor & Gilly, LLP
       85 Fifth Avenue, 5th Floor
       New York, New York 10003
       Telephone: (212) 257-6800
       Facsimile: (212) 257-6845

       *COUNSEL FOR PLAINTIFF*